MAIR, MAIR, SPADE & THOMPSON, L.L.C.
Attorneys at Law
238 A.F.C. Flores Street
Suite 801, DNA Building
Hagåtña, Guam 96910
Telephone: (671) 472-2089/90
Facsimile:  (671) 477-5206

Attorneys for Defendant Commonwealth Ports
  Authority

Jose A. Bermudes, Esq.
Staff Attorney
Commonwealth Ports Authority
PO Box 501055
Saipan MP 96950
Tel: (670)237-6500
Fax: (670)234-5962

Co-Counsel for Defendant Commonwealth Ports
  Authority

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| ROBERT M. AND MA. THERESE MALATE, | ) ) | CIVIL CASE NO. CV09-0027 |
| v. | ) ) | |
| COMMONWEALTH PORTS AUTHORITY AND COMMONWEALTH UTILITIES CORPORATION. | ) ) ) ) | **Date:  April 15, 2010** **Time:  _____** |
| Defendants. | ) ) ) | |

**DEFENDANT CPA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT AND STRIKE JURY DEMAND, REQUEST FOR PUNITIVE DAMAGES, ATTORNEYS' FEES, AND PREJUDGMENT INTEREST AND COSTS**

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

RELEVANT FACTS ...........................................................................................................1

ANALYSIS .........................................................................................................................2

    **I.**    **PLAINTIFFS BEAR A HEAVIER BURDEN IN THE FACE OF A RULE 12(b)(6) MOTION TO DISMISS** ...................................2

        A.    *Twombly* Adopts New 12(b)(6) Standard .................................2

        B.    *Ashcroft* Makes it Clear that New Standard Applies to All Cases ........................................................................3

        C.    Effect of New Standard .........................................................3

    **II.**    **CPA ENJOYS INHERENT SOVEREIGN IMMUNITY AND CAN BE SUED UNDER COMMONWEALTH LAW ONLY TO THE EXTENT IT HAS EXPRESSLY WAIVED SUCH IMMUNITY** ...................................................4

    **III.**    **PLAINITIFFS' FAILURE TO FIRST FILE A CLAIM IS A FATAL JURISDCTIONAL DEFECT WARRANTING DISMISSAL** ........................................................................................6

        A.    Plaintiffs Failed to File a Government Claim with the Attorney General's Office as Required by Statute ...................6

        B.    Courts Interpreting Similar FTCA Provisions Deem Non-Compliance Fatal ...........................................................7

        C.    Plaintiffs Failed to Provide "Minimal Notice" of the Claims and Damages Alleged ................................................8

        D.    Plaintiffs Failed to Plead Compliance with the Act ...................9

        E.    Plaintiffs Cannot Meet their Burden of Showing Compliance with the Act .........................................................................10

i

IV.    **PLAINTIFFS' JURY DEMAND SHOULD BE STRICKEN
       BECAUSE THE GOVERNMENT LIABILITY ACT
       EXPRESSLY PROHIBITS JURY TRIALS AGAINST
       THE COMMENWEALTH** ...............................................................12

       A.    FRCP 39(a) Authorizes a Motion to Strike a Jury Demand ..................13

       B.    Plaintiffs have Failed to Make a Sufficient Jury Demand .....................13

       C.    The Government Liability Act Expressly Provides that
             "There Shall Be No Jury Trials" .............................................................14

V.     **THE GOVERNMENT LIABILITY ACT EXPRESSLY
       STATES THAT PUNITIVE DAMAGES MAY NOT BE
       AWARDED AGAINST THE GOVERNMENT** .............................................16

VI.    **PREJUDGEMENT INTEREST AND COSTS MAY NOT
       BE AWARDED AGAINST THE COMMONWEALTH** ...........................17

VII.   **PLAINTIFFS' STRICT LIABILIY CLAIM IS
       UNACTIONABLE AS A MATTER OF LAW** ...............................................18

       A.    The Government Liability Act Excludes Strict
             Liability Claims.......................................................................................18

       B.    Generation of Electric Power is Not an Abnormally
             Dangerous Activity ..................................................................................19

VIII.  **PLAINTIFFS MAY NOT RECOVER ATTORNEYS' FEES** ....................22

       A.    The Commonwealth has Not Expressly Waived Liability
             for Attorneys' Fees...................................................................................22

       B.    Any Award of Attorneys' Fees Would Contravene
             General Tort Law Principles ...................................................................23

IX.    **PLAINTFFS HAVE FAILED TO STATE A CLAIM FOR
       RECKLESS INFLCITON OF EMOTIONAL DISTRESS** .........................23

**CONCLUSION**.............................................................................................................25

ii

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                    **PAGE(S)**

3

Ahmed v. Goldberg,
2001 WL 1842390 (D. N.M.I., May 11, 2001) ................................................4

4

Ashcroft v. Iqbal,
___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .............................3

5

6

Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .......................2, 3, 4

7

Biotics Research Corp. v. Heckler,
710 F.2d 1375 (9th Cir.1983) ......................................................................11

8

9

Bloom v. Waste Management, Inc.,
615 F. Supp. 1002 (E.D. Pa.1985), *affd without op.* at 800 F.2d 1131
and 800 F.2d 1142 (3d Cir. 1986) ...............................................................19

10

11

Brady v. U.S.,
211 F.3d 499 (9th Cir. 2000).......................................................................7, 8

12

Canton v. United States,
495 F.2d 635 (9th Cir. 1974) .......................................................................10

13

14

Clinton v. Commonwealth Edison Co.,
36 Ill.App.3d 1064, 344 N.E.2d 509 (1976) ...............................................20

15

Conley v. Gibson,
355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) .......................................2, 3

16

17

Crowley Marine Services, Inc. v. Fednav Ltd.,
924 F. Supp. 1030 (E.D.Wash.1995) ..........................................................12

18

Curtis v. Treasury Dept.,
2007 WL 460646, 1 (N.D.Cal.2007) ...........................................................10

19

20

DiNieva v. Reyes,
966 F.2d 480 (9th Cir. 1992)..........................................................................5

21

Dornfeld v. Oberg,
503 N.W.2d 115 (Minn. 1993)......................................................................24

22

23                                          iii

24

Dyniewicz v. Hawaii County,
733 P.2d 1224 (Hawaii App. 1987) ...................................................................15

Fleming v. Dept. of Pub. Safety,
837 F.2d 401 (9th Cir. 1988)..........................................................................4

Gillespie v. Civileti,
629 F.2d 637 (9th Cir.1980)..........................................................................10

In re Gagle,
230 B.R. 174 (Bkrtcy. D. Utah 1999) ...........................................................23

Kent v. Gulf States Utilities Co.,
418 So.2d 493 (La.1982)..........................................................................19, 20

Kentucky Utilities v. Auto Crane Co.,
674 S.W.2d 15 (Ky.App.1983) ....................................................................20

Killingsworth v. HSBC Bank Nevada, N.A.,
507 F.3d 614 (7th Cir. 2007)..........................................................................3

Kokkonen v. Guardian Life Ins. Co.,
511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ..............................10

Laird v. Nelms,
406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972) ...................................18

McCarthy v. United States,
850 F.2d 558 (9th Cir.1988), cert. denied, 489 U.S. 1052,
109 S.Ct. 1312, 103 L.Ed.2d 581 (1989) .....................................................11

McNeil v. U.S.,
508 U.S. 106 S.Ct. 1980 (1993).............................................................7, 8, 9

Moss v. U.S. Secret Service,
572 F.3d 962 (9th Cir. 2009)..........................................................................4

Nanartonis v. U.S.,
1986 WL 428 (D. Mass. 1986) .....................................................................24

Nelson by Tatum v. Commonwealth Edison Co.,
465 N.E.2d 513 (Ill. App. 1984) ..............................................................19, 20

iv

New Meadows Holding Co. v. Washington Water Co.,
34 Wash. App. 25, 659 P.2d 1113 (1983).................................................................20, 21

P.R.I.C.E., Inc. v. Keeney,
1998 WL 417591 (Conn. Super. 1998).......................................................................21

Pangelinan v. Northern Mariana Islands Retirement Fund,
2009 MP 12, 2009 WL 2854434, *12 (N.M.I. 2009).................................................22

Phillips v. Murdock,
543 F.Supp.2d 1219 (D. Hawai'i 2008)........................................................................3

Ruckelshaus v. Sierra Club,
463 U.S. 680, 77 L. Ed. 2d 938, 103 S. Ct. 3274 (1983)............................................5

Salinas v. Souza & McCue Constr. Co.,
66 Cal. 2d 217, 424 P.2d 921 (1967)........................................................................17

Sampson v. National Farmers Union Property and Cas. Co.,
144 P.3d 797 (Mont. 2006).......................................................................................23

Sierra Club v. Lujan,
972 F.2d 312 (10th Cir. 1992)......................................................................................5

Spawr v. U.S.,
796 F.2d 279 (9th Cir. 1986)........................................................................................8

State Dep't of Correction v. Workers' Comp. Appeals Bd.,
5 Cal. 3d 885, 489 P.2d 818 (1971)..........................................................................16

Sumitomo v. Govt. of Guam,
2001 Guam 23................................................................................................................5

United States v. Orleans,
425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976)................................................18

Voelker v. Delmarva Power and Light Co.,
727 F. Supp. 991 (D. Md. 1989)................................................................................20

Walker v. U.S.,
2009 WL 3011626 (E.D. Cal., Sept. 17, 2009).....................................................10, 11

v

Warren v. U.S. Dep't of Interior Bureau of Land Mgmt.,
724 F.2d 776 (9th Cir. 1984)(en banc).................................................................9

Warrum v. U.S.,
427 F.3d 1048 (7th Cir. 2005)...............................................................................8

Western Farm Credit Bank v. Hamakua Sugar Co., Inc.,
841 F.Supp. 976 (D. Haw. 1994), *affd.*, 87 F.3d 1326 (9th Cir. 1996)...............11, 12

White v. Lee,
227 F.3d 1214 (9th Cir. 2000)............................................................................11

**OTHER AUTHORITIES**                                                                          **PAGE(S)**

2 CMC § 2121 .......................................................................................................5

4 CAL. LAW REVISION COM. REP. (Jan. 1963, p. 817) ...........................................16

5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*:
Civil § 1364 (3d ed. 2004) ...................................................................................11

7 CMC § 2201 .............................................................................5, 7, 8, 14, 18

7 CMC § 2202(a)(2)...................................................................................16, 17

7 CMC § 2202(b) ...................................................................................................6

7 CMC § 2202(e) .................................................................................................14

7 CMC §  2211(a) ..................................................................................................5

7 CMC § 2214 ......................................................................................................15

7 CMC § 2253 ......................................................................................................15

*Applicability of rule of strict liability to injury from electrical current
escaping from powerline*, 82 A.L.R.3d 218 (1978) ................................................19

*Restatement (Second) Torts*
§ 46, cmt. a (1965) ........................................................................................20, 21, 24

Schwarzer, Tashima and Wagstaffe, *Federal Civil Procedure Before Trial*
§§ 9:85-87 (1993).................................................................................................................12

Wm. W. Schwarzer, et.al., *Fed. Civil Procedure Before Trial*
§8:179 (Rutter 2005 ed.) .....................................................................................................14

vii

1

**<u>INTRODUCTION</u>**

2

   This memorandum supports Defendant Commonwealth Ports Authority's ("CPA")

3

motion to dismiss for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1) and failure

4

to state a claim pursuant to FRCP 12(b)(6); and FRCP 12(f) motion to strike jury demand and

5

request for punitive damages, attorneys' fees, and prejudgment interest and costs.

6

   For multiple separate and independent reasons, the Complaint in the above-captioned

7

cause is fatally defective and is due to be dismissed, in full or in part.  The Complaint alleges

8

negligence and other theories in connection with an alleged electrocution incident that occurred

9

on the premises of Defendant CPA.  It is clear beyond peradventure that in order to succeed on

10

their Complaint against the two government-agency defendants, Plaintiffs must prove their

11

compliance with applicable provisions of the Government Liability Act.  Yet, Plaintiffs made

12

no attempt to comply with the provisions of the Act; and, moreover, Plaintiffs have purportedly

13

lodged a demand for trial by a jury as well as prayers for punitive damages, attorneys' fees, and

14

other forms of relief that are simply unavailable to a party suing the Commonwealth.  Thus the

15

Complaint is due to be dismissed in its entirety or in part, and certain relief stricken.

16

**<u>RELEVANT FACTS</u>**

17

   Plaintiffs filed the instant Complaint on August 11, 2009, for injuries that allegedly

18

occurred on August 20, 2007.  Complaint at ¶7.  Defendants CPA is a public corporation of the

19

Commonwealth.  Although this action is pending in federal court, the basis for the court's

20

exercise of jurisdiction is not a federal question but rather diversity of citizenship.  *See*

21

Complaint at ¶¶ 1, 3-5.  Plaintiffs' Complaint in the instant case is entitled, "Complaint and

22

Jury Demand."  *See* Complaint at p. 1.  However, the text of the Complaint nowhere actually

23

24

1

contains any jury demand; and neither does it cite any rule or statute that purportedly entitled Plaintiffs to a jury trial under either local or federal law.

Plaintiffs' claims generally sound in negligence.  However, Plaintiffs' Third Cause of Action, alleges "Reckless Infliction of Emotional Distress."   Complaint at ¶¶53-58. Additionally, Plaintiffs' Fifth Cause of Action purports to state a claim for "Strict Liability" against CPA, alleging that CPA was engaging in an "abnormally dangerous activity," and thus is "strictly liable" for Plaintiffs' injuries.  Complaint at ¶¶ 65, 66, respectively.  In their Prayer for Relief, Plaintiffs request attorneys' fees, "statutory" damages, punitive damages, and prejudgment interest, amongst other things.  Complaint at p. 16.

Finally, Plaintiffs failed to allege they filed a government claim before the filing of the instant action because, in fact, Plaintiffs failed to file any formal government claim.

## ANALYSIS

### I.

### PLAINTIFFS BEAR A HEAVIER BURDEN IN THE FACE OF A RULE 12(b)(6) MOTION TO DISMISS

Recently, the U.S. Supreme Court raised the bar for plaintiffs, imposing upon them a greater burden in the face of a Rule 12(b)(6) motion to dismiss.

#### A. *Twombly* Adopts New 12(b)(6) Standard

In the 2007 case of <u>Bell Atlantic Corp. v. Twombly</u>, the Supreme Court "retired" the former permissive standard set forth in <u>Conley v. Gibson</u>, which held that the trial court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Bell Atlantic Corp. v.</u>

2

1    Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), *citing* Conley v. Gibson, 355

2    U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  In its place, the Supreme Court set forth a

3    new higher standard, holding that in order to survive a motion to dismiss, a complaint must

4    contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on

5    its face." Twombly, 550 U.S. at 570, 127 S.Ct. 1955.  A claim has facial plausibility when the

6    plaintiff pleads factual content that allows the court to draw the reasonable inference that the

7    defendant is liable for the misconduct alleged.  *Id.* at 556, 127 S.Ct. 1955.

8        Subsequently, other courts have observed that Twombly "retooled federal pleading

9    standards," and had retired "the oft-quoted Conley formulation."  Killingsworth v. HSBC Bank

10   Nevada, N.A., 507 F.3d 614, 618 (7th Cir. 2007).

11       **B.  *Ashcroft* Makes it Clear that New Standard Applies to All Cases**

12       Initially, numerous courts declined to apply the new Twombly standard to all cases, on

13   the assumption that the Supreme Court's holding was limited to cases arising in an antitrust

14   context.  *See* Phillips v. Murdock, 543 F.Supp.2d 1219, 1223 (D. Hawai'i 2008) (collecting

15   cases ruling each way).  However, last year the Supreme Court addressed and disposed of that

16   concern in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  However,

17   in Ashcroft, the court unequivocally stated that, **"[o]ur decision in Twombly expounded the**

18   **pleading standard for 'all civil actions** . . . '".  *Id.*, 129 S.Ct. at 1953.

19       **C.  Effect of New Standard**

20       Courts applying the Federal Rules, or counterparts thereof, are still in the process of

21   sorting out the full implications of the Supreme Court's recent rulings.  Last year, the Ninth

22   Circuit summarized the new 12(b)(6) standard as follows: "In sum, for a complaint to survive a

23                                                     3

24

motion to dismiss, the [complaint's] non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). What is clear is that while a complaint need not contain detailed factual allegations, it must provide more than "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. And it must also allege "enough facts to state a claim that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. If "plaintiffs [do] not nudg[e] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.*

## II.

**CPA ENJOYS INHERENT SOVEREIGN IMMUNITY AND CAN BE SUED UNDER COMMONWEALTH LAW ONLY TO THE EXTENT IT HAS EXPRESSLY WAIVED SUCH IMMUNITY**

Although this action is pending in federal court, the basis for the court's exercise of jurisdiction is not a federal question but rather diversity of citizenship. *See* Complaint at ¶¶ 1, 3-5. Thus, CPA's liability, if any, is subject to this court's interpretation of substantive Commonwealth law. Since CPA is a public corporation, liability also turns on the doctrine of sovereign immunity.

This Court has recognized that the Commonwealth government enjoys sovereign immunity and will not be subject to suit under Commonwealth law without its consent. Ahmed v. Goldberg, 2001 WL 1842390, *11 (D. N.M.I., May 11, 2001) (holding that the Government Liability Act does not waive immunity from claims arising out of false imprisonment). *See also*, Fleming v. Dept. of Pub. Safety, 837 F.2d 401, 407 (9th Cir. 1988) ("[t]he Government of

4

1   the Northern Mariana Islands will have sovereign immunity, so that it cannot be sued on the

2   basis of its own laws without its consent."); *overruled on other grounds by* <u>DiNieva v. Reyes</u>,

3   966 F.2d 480, 483 (9th Cir. 1992).

4          In fact, the Commonwealth has consented to be sued only in limited circumstances, as

5   set forth in the Government Liability Act.  *See* 7 CMC § 2201, *et  seq.* (as amended 2007).

6   The Government Liability Act (the "Act") plainly applies to tort claims against Defendant

7   CPA; and thus it governs the substance and procedure of Plaintiffs' claims in this action.

8   Specifically, 7 CMC Section 2211(a) provides that the Act's operative provisions "shall apply

9   to public corporations, boards, and commissions organized and existing under and pursuant to

10  the laws of the Commonwealth, to the same extent as the sections apply to the Commonwealth

11  itself."   That broad pronouncement encompasses CPA, because CPA's defining statute dubs it

12  a "public corporation."  2 CMC § 2121.

13         According to the U.S. Supreme Court, "[a] court must strictly construe a waiver in favor

14  of the sovereign and may not extend it beyond what the language of the statute requires."

15  <u>Sierra Club v. Lujan</u>, 972 F.2d 312, 314 (10th Cir. 1992); <u>Ruckelshaus v. Sierra Club</u>, 463 U.S.

16  680, 686, 77 L. Ed. 2d 938, 103 S. Ct. 3274 (1983) (Any tension in a provision purporting to

17  waive sovereign immunity "is resolved by the requirement that any statement of waiver be

18  unequivocal.").  *See also* <u>Sumitomo v. Govt. of Guam</u>, 2001 Guam 23, ¶ 25 (recognizing the

19  rule of statutory construction that statutes purporting to waive sovereign immunity are to be

20  strictly construed in favor of the sovereign).

21

22

23                                                     5

24

Plaintiffs' Complaint in the instant case requests forms of relief which are manifestly beyond the scope of the Government's limited waiver of sovereign immunity in the Claims Act.  Each of the issues in this regard will be discussed in turn below.

## III.

### PLAINITIFFS' FAILURE TO FIRST FILE A CLAIM IS A FATAL JURISDCTIONAL DEFECT WARRANTING DISMISSAL

#### A. Plaintiffs Failed to File a Government Claim with the Attorney General's Office as Required by Statute

As we have seen, the Commonwealth and its agencies, such as CPA, can only be sued in court consistent with the Government Liability Act. This means that the Complaint in this action is fatally defective, because Plaintiffs have, among other things, failed to allege and cannot prove that that they met the Act's requirement of first filing a claim with the Office of the Attorney General as a condition precedent to filing their lawsuit.

According to the Government Liability Act, the filing of a formal government claim with the Attorney General is the primary prerequisite for maintaining a tort suit against the Commonwealth.  7 CMC § 2202(b) (2006 amendments).  In fact, the Act expressly mandates that "an action shall not be instituted upon a claim against the Commonwealth for money . . . unless the claimant shall have first presented the claim to the Attorney General."  *Id.* In pertinent part, Section 2201(b) reads as follows:

> **An action shall not be instituted** upon a claim against the Commonwealth for money damages for injury or loss of property or personal injury or death caused by the negligent act or omission of any employee of the Commonwealth while acting within the scope of his/her employment, **unless the**

6

> **claimant shall have first presented the claim to the Attorney General and the claim shall have been finally denied by the Attorney General, in writing, and the claimant so notified.** The failure of the Attorney General to make final disposition of a claim within 90 days after it is presented shall be deemed a final denial of the claim for purposes of this section.  [Emphasis added.]

This claim-presentation requirement was enacted into law as an amendment to the Government Liability Act on July 28, 2006.  *See* Law Rev. Commission Comment following 7 CMC §2201 (Aug. 31, 2007 Cumulative Supp.) at p. 1.  Plaintiffs' alleged injuries stem from an incident occurring on August 20, 2007.  Complaint at ¶7.  Plaintiffs filed their Complaint on August 11, 2009.  Clearly, Plaintiffs needed to comply with this provision.  However, they did not comply with it.

### B.  Courts Interpreting Similar FTCA Provisions Deem Non-Compliance Fatal

The Law Revision Commission note to the statute indicates that the claim-presentation provision is "in accord with the current federal requirements under the Federal Tort Claims Act."  *See* Law Rev. Commission Comment following 7 CMC §2201 (Aug. 31, 2007 Cumulative Supp.) at p. 2.  In fact, the Government Liability Act "closely tracks provisions of the Federal Tort Claims Act" ("FTCA").  Courts interpreting the FTCA have consistently held that the failure to comply with the claim-presentation requirement similar to this one amounts to a jurisdictional defect warranting dismissal of the complaint.  *See* <u>McNeil v. U.S.</u>, 508 U.S. 106, 113 S.Ct. 1980, 1984 (1993) (affirming dismissal of prisoner's FTCA claims based on holding that "the FTCA bars claimants from brining suit in federal court until they have exhausted their administrative remedies"); <u>Brady v. U.S.</u>, 211 F.3d 499, 502 (9th Cir. 2000) (dismissing FTCA wrongful death claims for lack of subject matter jurisdiction because the plaintiff failed to file

an administrative claim before instituting the action) (citations omitted); <u>Spawr v. U.S.</u>, 796 F.2d 279, 280 (9th Cir. 1986) (dismissing FTCA claims for suspension of export privileges); <u>Warrum v. U.S.</u>, 427 F.3d 1048, 1050 (7th Cir. 2005) (affirming dismissal of FTCA claim for wrongful death).

The U.S. Supreme Court strictly adheres to the claim requirement and has stated that "[a]s we have noted before, in the long run, experience teaches us that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." <u>McNeil v. U.S.</u>, 508 U.S. 106, 113 S.Ct. at 1984 (internal quotation and citations omitted).  Ninth Circuit precedent similarly holds that the "requirement of an administrative claim is jurisdictional.  [Citation].  Because the requirement is jurisdictional, it 'must be strictly adhered to.  This is particularly so since the [Claims Act] waives sovereign immunity.  Any such wavier must be strictly construed in favor of the [Commonwealth].'" <u>Brady v. U.S.</u>, 211 F.3d at 502; *see also* <u>Spawr v. U.S.</u>, 796 F.2d at 280 (interpreting the FTCA, the court stated that "[t]his claim requirement is jurisdictional in nature and cannot be waived.")

**C.** **<u>Plaintiffs Failed to Provide "Minimal Notice" of the Claims and Damages Alleged</u>**

The Comments of the Law Commission state that the claim-presentation requirement rests on sound logic: "This mandatory time period would allow the Commonwealth to investigate claims and settle valid ones without the expenses of litigation, resulting in less expense to the Commonwealth and greater net recoveries to deserving plaintiffs."  7 CMC § 2201, cmt., supra, p. 1.

8

This reasoning has also been recognized and supported by the Supreme Court, which noted that an administrative claim:

> . . . would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage. That agency would have the best information concerning the activity which gave rise to the claim.  Since it is the one directly concerned, it can be expected that the claims to be found to be meritorious can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation.

McNeil, 508 U.S. 103, 113 S.Ct. at 1983, n.7.  The Supreme Court has held that "given the clarity of the statutory text, [the government claim requirement] is certainly not a 'trap for the unwary.'"  McNeil, 508 U.S. 106, 113 S.Ct. at 1984.  Plaintiffs cannot claim lack of guidance from the Claims Act for the government claim requirement because all that is required is "minimal notice" to the agency.  Warren v. U.S. Dep't of Interior Bureau of Land Mgmt., 724 F.2d 776, 780 (9th Cir. 1984)(en banc).

The Ninth Circuit concurs that the "claim requirement" simply mandates that the claimant "file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."  Warren v. U.S. Dep't of Interior Bureau of Land Mgmt., 724 F.2d at 780.  Therefore, Plaintiffs' failure to file a government claim cannot be excused by any lack of express guidance for filing the claim in the text of the Act.  The Complaint is due to be dismissed on that ground.

**D.   Plaintiffs Failed to Plead Compliance with the Act**

While the CNMI Government Liability Act does not expressly state that a plaintiff's complaint must plead compliance with the Act, cases interpreting the FTCA hold that a

9

1    plaintiff must, in fact, affirmatively allege in his complaint "the timely filing of an

2    administrative claim [as] a jurisdictional prerequisite to the bringing of suit under the FTCA."

3    Gillespie v. Civileti, 629 F.2d 637, 640 (9th Cir.1980).  In fact, "[t]he claim presentation

4    requirement is a jurisdictional prerequisite to bringing suit and must be affirmatively alleged in

5    the complaint."  Walker v. U.S., 2009 WL 3011626, *2 (E.D. Cal., Sept. 17, 2009).  Courts

6    addressing non-compliance with the FTCA have indicated that there are two distinct modes of

7    attack, as follows.  See Curtis v. Treasury Dept., 2007 WL 460646, 1 (N.D.Cal.2007).

8         Some courts have treated the failure to plead jurisdictional perquisites as an elemental

9    defect in the plaintiff's cause of action and thus dismiss for failure to state a claim pursuant to

10   Rule 12(b)(6).  However, in such cases the remedy is generally to allow "the pleader an

11   opportunity to file an amended complaint to attempt to cure such pleading defects."  Canton v.

12   United States, 495 F.2d 635 (9th Cir. 1974).  Thus, the instant motion reaches beyond the

13   pleadings to reach the substance of the matter, as indicated below.

14   **E.  Plaintiffs Cannot Meet their Burden of Showing Compliance with the Act**

15        In addition to Rule 12(b)(6), CPA's motion is also being brought pursuant to Rule

16   12(b)(1).  This is appropriate because, motions challenging compliance with a claims act go to

17   the court's jurisdiction to hear the case pursuant to FRCP 12(b)(1).  Rule 12(b)(1) authorizes a

18   party to move to dismiss a claim for lack of subject matter jurisdiction.  Federal courts are

19   courts of limited jurisdiction; thus, the Court presumes lack of jurisdiction, and the party who

20   seeks to invoke the court's jurisdiction bears the burden of proving that subject matter

21   jurisdiction exists.  See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S.Ct.

22   1673, 128 L.Ed.2d 391 (1994).  A party challenging the court's jurisdiction under Rule 12(b)(1)

23

24

10

1    may do so by raising either a facial attack or a factual attack.  *See* <u>White v. Lee</u>, 227 F.3d 1214,

2    1242 (9th Cir. 2000).

3         In opposition to this motion, CPA expects Plaintiffs to proffer some sort of evidence of

4    purported compliance with the Act, such as a hearsay declaration indicating that someone told

5    them that a claim was unnecessary, or that their claim somehow got lost, or *something*.

6    Plaintiffs tend to say the darnedest things when called on this point.  *See* <u>Walker v. U.S.</u>, 2009

7    WL 3011626, *2 (E.D. Cal., Sept. 17, 2009).  Therefore, in the interest of judicial economy,

8    CPA invites the Court to treat the instant motion as a "factual attack" on jurisdiction; and thus

9    to take and consider factual evidence of compliance and noncompliance, rather than just treat it

10   as an attack on the face of the pleadings.

11        The Court can do this, without converting the motion into a Rule 56 motion for

12   summary judgment, because "[w]hen considering a motion to dismiss under Rule 12(b)(1), the

13   district court is not restricted to the pleadings, but may review any evidence outside the

14   pleadings to resolve factual disputes concerning the existence of jurisdiction."  <u>Western Farm</u>

15   <u>Credit Bank v. Hamakua Sugar Co., Inc.</u>, 841 F.Supp. 976, 980 (D. Haw. 1994), *affd*., 87 F.3d

16   1326 (9th Cir. 1996); *citing*, <u>McCarthy v. United States</u>, 850 F.2d 558, 560 (9th Cir.1988), *cert.*

17   *denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); <u>Biotics Research Corp. v.</u>

18   <u>Heckler</u>, 710 F.2d 1375, 1379 (9th Cir.1983).  This is so because courts recognize that the

19   validity of such a defense is "rarely apparent on the face of the pleadings" and generally must

20   be resolved by reference to matters outside the pleadings.  5C Charles A. Wright & Arthur R.

21   Miller, *Federal Practice and Procedure*: Civil § 1364 (3d ed. 2004), at pp. 124-126.

22

23                                              11

24

Indeed, it is entirely proper for the Court to proceed to consider matters outside the pleadings in entertaining a motion to dismiss for lack of jurisdiction.  *See* <u>Western Farm Credit</u>, 841 F. Supp. at 980.  A sister court sitting within the Ninth Circuit has summed up the matter as follows:

> **When considering a motion to dismiss under Rule 12(b)(1), the district court is not restricted to the pleadings**, but may review **any evidence outside the pleadings** to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); *Western Farm Credit Bank v. Hamakua Sugar Co., 841 F.Supp. 976, 980 (D.Haw.*1994). The plaintiff bears the burden of establishing the court's jurisdiction. *See* Schwarzer, Tashima and Wagstaffe, *Federal Civil Procedure Before Trial* §§ 9:85-87 (1993).

<u>Crowley Marine Services, Inc. v. Fednav Ltd.</u>, 924 F. Supp. 1030, 1033 (E.D. Wash. 1995) (emphasis added).  Plaintiffs here will be completely unable to discharge their burden of establishing subject matter jurisdiction because they simply failed to file a pre-suit claim.

## IV.

### PLAINTIFFS' JURY DEMAND SHOULD BE STRICKEN BECAUSE THE GOVERNMENT LIABILITY ACT EXPRESSLY PROHIBITS JURY TRIALS AGAINST THE COMMONWEALTH

Even if the Government Liability Act's claim-presentation requirement were somehow to be overcome, Plaintiffs' Complaint still suffers from several fatal defects warranting dismissal, in whole or in part.  For starters, the Complaint's purported demand for trial by jury is manifestly defective and due to be stricken pursuant to FRCP 12(f).

**A.  <u>FRCP 39(a) Authorizes a Motion to Strike a Jury Demand</u>**

The Federal Rules of Civil Procedure ("FRCP") clearly contemplate motions to strike improvidently-filed jury demands.  FRCP Rule 39(a) provides as follows:

> **Rule 39. Trial By Jury or By the Court.**
>
> **(a) By Jury.** When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action.  **The trial of all issues so demanded shall be by jury, unless** (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without jury or (2) **the court upon motion** or of its own initiative **finds that on some or all of those issues there is no federal right a jury trial.** [Emphasis added].

Thus, pursuant to Rule 39(a)(2), it is appropriate to bring a Rule 12(f) motion to strike a jury demand where a right of trial by jury does not exist.  *See* <u>Shabaz v. Polo Ralph Lauren Corp.,</u> 586 F.Supp.2d 1205, 1211 (C.D. Cal. 2008) (granting Rule 12(f) motion to strike, the court held that "[a] district court may strike a jury demand if the court finds that the issues presented are not entitled to a jury trial.")

**B.  <u>Plaintiffs have Failed to Make a Sufficient Jury Demand</u>**

Plaintiffs' Complaint in the instant case is entitled, "Complaint and Jury Demand."  *See* Complaint at p. 1.  However, other than the title of the document, the Complaint contains nothing to suggest that Plaintiffs are actually *demanding* a trial by jury.  The text of the Complaint nowhere actually contains any jury demand; and neither does it cite any rule or statute that purportedly entitled Plaintiffs to a jury trial under either local or federal law.

13

Arguably, the failure to include an express demand for a jury trial in the Complaint is alone sufficient to be deemed a waiver of any such right to trial by jury pursuant to FRCP Rule 38(b).  *See* Wm. W. Schwarzer, et.al., *Fed. Civil Procedure Before Trial* §8:179 (Rutter 2005 ed.) (Demand should contain words, "Plaintiff (or defendant) hereby demands trial by jury."). However, the Court need not rely upon any such formulary deficiency here, because it is clear—as a matter of substantive CNMI law—that a jury trial against the Commonwealth is manifestly beyond the scope of the Government's limited waiver of sovereign immunity.

C.  **The Government Liability Act Expressly Provides that "There Shall Be No Jury Trials"**

As we have seen, the Commonwealth Legislature has consented to be sued in limited circumstances, as set forth in the Government Liability Act.  *See* 7 CMC 2201, *et. seq.*  One of the express conditions imposed by the Legislature for suits against the Government is that "[t]here shall be no jury trials . . . ."  The statute reads as follows:

> There shall be no jury trials of tort actions against the Commonwealth or its employees unless requested, or assented to, by the Commonwealth.

*See* 7 CMC § 2202(e) (2007).

It is difficult to imagine a clearer proscription against jury trials.  In fact, according to the Law Revision Commission's Note to the 2007 codification of the Act, the purpose of this anti-jury-trial language was to "clarify current ambiguities in Commonwealth law concerning the availability of jury trials in tort cases . . ." Law Revision Commission Note following 7 CMC 2201 (Aug. 31, 2007, Cumm. Supp. at pp. 2-3).  Thus, there can be no doubt that the Legislature intended to preclude jury trials against the Commonwealth.

14

1    Moreover, even if Section 2202(e)'s plain text were not plain enough, a separate

2    provision of the Government Liability Act also prohibits trials by jury.  *See* 7 CMC § 2253.

3    That provision states that, "[n]otwithstanding the provisions of chapter 3 of this division

4    (commencing with 7 CMC 3301), all actions brought under this article shall be tried by the

5    court without a jury."  This immunity can be waived in a particular case.  *See* 7 CMC § 2214.

6    However, Plaintiffs have not pleaded and cannot prove that CPA has waived that immunity.

7    It is well settled that where a state or territory's claims act prohibits jury trials of claims

8    against the government, such provisions will be strictly enforced.  For example, in <u>Dyniewicz</u>

9    <u>v. Hawaii County</u>, 733 P.2d 1224, 1230 (Hawaii App. 1987), the plaintiffs contended that the

10   lower court reversibly erred when it denied their motion for a jury trial of their tort claim

11   against the State.  The Hawaii Court of Appeals disagreed, holding that Hawaii's equivalent of

12   the Government Liability Act expressly barred jury trials and that such provision must be

13   enforced absent any express waiver by the Government.  The court said:

14
15               Plaintiffs' claim against the State sounds in tort and is governed
                 by the State Tort Liability Act, HRS chapter 662.  **Although**
16               **Plaintiffs demanded a jury trial when they filed their**
                 **complaint, they had no absolute right to a trial by jury**
17               **against the State** because HRS § 662-5 (1985) provides: "Jury.
                 **Any action against the State under this chapter shall be**
18               **tried by the court without a jury**; provided that the court, with
                 the consent of all the parties, may order a trial with a jury whose
19               verdict shall have the same effect as if trial by jury had been a
                 matter of right."

20   *Id.* 733 P.2d at 1230 (emphasis added).

21   The CNMI's statutes and procedural rules are substantially identical to Hawaii's in this

22   respect; and the result should be the same: Plaintiffs simply have no right to trial by jury.  It is

23                                              15

24

1   clear beyond peradventure that the Legislature has not waived sovereign immunity so as to

2   provide for jury trials against Government agencies.   Accordingly, the instant FRCP 12(f)

3   motion to strike Plaintiffs' jury demand should be GRANTED.

4   **V.**

5   **THE   GOVERNMENT   LIABILITY   ACT   EXPRESSLY**

6   **STATES   THAT   PUNITIVE   DAMAGES   MAY   NOT   BE**
**AWARDED AGAINST THE GOVERNMENT**

7       In their Prayer for Relief, Plaintiffs request "punitive damages."   Complaint at p. 16.

8   However, the Government Liability Act makes it plain that, "the Commonwealth Government

9   shall not be liable for . . . punitive damages."   7 CMC §2202(a)(2).   This is consistent with the

10  general rule of sovereign immunity in most jurisdictions.

11      In addition to the statutory prohibition of the Government Liability Act, there are sound

12  public policy reasons why courts have routinely upheld similar statutory provisions barring

13  recovery of punitive damages against public entities.   One such court stated that, "[p]ublic

14  entities shall not be liable for punitive or exemplary damages.   Such damages are imposed to

15  punish a defendant for oppression, fraud or malice.   They are inappropriate where a public

16  entity is involved, since they would fall upon the innocent taxpayers."   State Dep't of

17  Correction v. Workers' Comp. Appeals Bd., 5 Cal. 3d 885, 888, 489 P.2d 818 (1971)

18  (explaining the legislature's reasoning adopting CAL. GOV'T CODE § 818, which barred punitive

19  damages against government entities).[1]   Another court reasoned that, ". . . the levying of

20  punitive damages against a public entity has not been authorized.   To do so would impose an

_____

22       [1]   Citing Recommendations Relating to Sovereign Immunity, No. 1—Tort Liability of Public
Entities Public Employees, 4 CAL. LAW REVISION COM. REP. (Jan. 1963, p. 817).

16

unjust burden upon the innocent taxpayer without directly penalizing the wrongdoer.   The

punitive purpose would thus be frustrated."   <u>Salinas v. Souza & McCue Constr. Co.</u>, 66 Cal. 2d

217, 228, 424 P.2d 921 (1967).

The Government Liability Act clearly states that punitive damages are not recoverable

against the government; and this policy has been examined and upheld by the courts.   The

prohibition is plain and express; and it is supported by sound public-policy considerations.

Therefore, it is appropriate for this Court to foreclose Defendant's liability to Plaintiffs for

punitive damages; and thus, pursuant to FRCP 12(f), CPA's motion to strike Plaintiffs' demand

for punitive damages should be GRANTED.

**VI.**

**PREJUDGEMENT  INTEREST  AND  COSTS  MAY  NOT
BE AWARDED AGAINST THE COMMONWEALTH**

In their Prayer for Relief, Plaintiffs also request attorneys' fees, "statutory" damages,

and prejudgment interest, amongst other things.   Complaint at p. 16.   However, just as the

Government Liability Act precludes recovery of punitive damages, so too does it clearly and

unambiguously preclude these other kinds of damages. Specifically, pursuant to 7 CMC

Section 2202(a)(2), "[t]he Commonwealth shall not be liable for interest prior to judgment,

court fees, witness fees, or for punitive damages."   Little more needs to be said on that point.

Thus, Plaintiffs request for such relief should be stricken.

/ /

/ /

17

**VII.**

**PLAINTIFFS' STRICT LIABILIY CLAIM IS UNACTIONABLE AS A MATTER OF LAW**

Plaintiffs' Fifth Cause of Action purports to state a claim for "Strict Liability" against CPA, alleging that CPA was engaging in an "abnormally dangerous activity," and thus is "strictly liable" for Plaintiffs' injuries. Complaint at ¶¶ 65, 66, respectively. For two separate and independent reasons, this purported cause of action is dead on arrival.

**A.   The Government Liability Act Excludes Strict Liability Claims**

As we have seen, the Government Liability Act "closely tracks provisions of the Federal Tort Claims Act" ("FTCA"). *See* Law Rev. Commission Comment to 7 CMC §2201 (Aug. 31, 2007 Cumulative Supp.). According to the Supreme Court of the United States, theories of strict liability and vicarious liability are excluded from the coverage of the FTCA because the waiver of sovereign immunity embodied in the FTCA authorizes suit against the United States only on account of the negligent or otherwise wrongful conduct of a Government employee. *See* Laird v. Nelms, 406 U.S. 797, 799, 92 S.Ct. 1899, 1901, 32 L.Ed.2d 499 (1972) ("Regardless of state law characterization, the Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of 'misfeasance or nonfeasance,'" on the part of the Government.") (Internal citations omitted); United States v. Orleans, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

In common with the FTCA, the Government Liability Act only effectuates a limited waiver of immunity from "tort damages arising from the *negligent acts* of employees of the Commonwealth. . . ." 7 CMC §2202 (emphasis added). Under no stretch of the imagination

18

1   can this narrow waiver be deemed a waiver with respect to strict liability.   Thus, Plaintiffs'

2   strict liability claim should be dismissed.  *See* <u>Bloom v. Waste Management, Inc.</u>, 615 F. Supp.

3   1002, 1007 (E.D. Pa.1985), *affd without op.* at 800 F.2d 1131 and 800 F.2d 1142 (3d Cir. 1986)

4   (dismissing strict-liability FTCA claim brought by employee of a government contractor who

5   was electrocuted when he attempted to tie a ground wire to an overhanging electric power line).

6   **B.  <u>Generation of Electric Power is Not an Abnormally Dangerous Activity</u>**

7   Plaintiffs have yet another problem.  For even if strict liability claims were actionable

8   under the Government Liability Act--which clearly they are not--the instant claim would still

9   have to be dismissed because courts around the country have universally rejected the notion

10  that the generation of electrical power constitutes an "abnormally dangerous activity" sufficient

11  to impose strict liability on a defendant.  *See* <u>Kent v. Gulf States Utilities Co.</u>, 418 So.2d 493

12  (La.1982) (holding that electrical utility would not be held absolutely liable, as enterpriser

13  engaged in ultrahazardous activities for transmitting electricity unless fault was proved on

14  utility's part); <u>Nelson by Tatum v. Commonwealth Edison Co.</u>, 465 N.E.2d 513, 52, (Ill. App.

15  1984) (Rejecting doctrine of absolute liability in electrocution case, noting "a clear distinction

16  between requiring a defendant to exercise a high degree of care when involved in a potentially

17  dangerous activity and requiring a defendant to absolutely insure the safety of others when

18  engaging in an ultra hazardous activity.").  *See also*, Annotation: *Applicability of rule of strict*

19  *liability to injury from electrical current escaping from powerline*, 82 A.L.R.3d 218 (1978).

20  In 1989, the federal district court sitting in the District of Maryland surveyed the law on

21  point and found that, **"[w]ithout exception, each court considering the issue has rejected**

22  **any finding of strict or absolute liability for the activity of transmitting electricity."**

19

23

24

Voelker v. Delmarva Power and Light Co., 727 F. Supp. 991, 994-995 (D. Md. 1989).   In

adopting that analysis, the court made the following observations germane to the issue at hand:

> First, it need not be stated that **the transmission of electricity is a daily occurrence in every community in the United States.** As such, it is a matter of common usage.   **This will weigh heavily against any finding of an "abnormally dangerous activity.**"   *See New Meadows Holding Co. v. Washington Water Co.,* 34 Wash. App. 25, 659 P.2d 1113 (1983); *Kent v. Gulf States Utilities Co.,* 418 So.2d 493, 498-99 (La.1982). Furthermore, to hold utilities to absolute liability by declaring their conduct to be ultrahazardous would be the equivalent of declaring them insurers for all members of the community in which they serve.   **This Court, along with others which have considered the issue, will not impose that responsibility upon a utility company.**   *See Nelson by Tatum v. Commonwealth Edison Co.,* 124 Ill.App.3d 655, 80 Ill.Dec. 401, 410-11, 465 N.E.2d 513, 522-23 (1984); *Kent,* at 498-99; *Clinton v. Commonwealth Edison Co.,* 36 Ill.App.3d 1064, 344 N.E.2d 509 (1976); *Kentucky Utilities v. Auto Crane Co.,* 674 S.W.2d 15, 18 (Ky.App.1983).

> Additionally, **the rules of strict liability for abnormally dangerous activities rarely apply to acts carried out in pursuance to a public duty.**   Restatement of Torts, Second, Section 521.   The transmission of electricity by a public utility is a public duty.   Therefore, strict liability is inappropriate. *Kentucky Utilities,* at 18.   It is also worth noting that in most ultrahazardous activity cases there is no ability to protect oneself.   The victim has no connection to the events which lead to his accident.   Here, the decedent came to the hazard.   It was not imposed upon him.   The facts of this case do not fall within those of the traditional ultrahazardous activity case. *Id.,* [Bold emphasis added.]

It is notable, that the Voelker court based its analysis, at least in part, on the rules

codified in the *Restatement (Second) of Torts,* upon which the courts of the Commonwealth

rely.   Sections 519 and 520 of the *Restatement* address the doctrine of strict liability for

20

ultrahazardous activities. Section 520 sets forth the following factors to be considered in determining whether an activity is abnormally dangerous: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." *3 Restatement (Second) of Torts* § 520 (1976).  As the Comment to the Restatement provides:

> For an activity to be abnormally dangerous, not only must it create a danger of physical harm to others, but the danger must be an abnormal one.  In general, abnormal dangers arise from activities that are in themselves unusual, or from unusual risks created by more usual activities under particular circumstances. In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance.  Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability.

*3 Restatement (Second), supra* § 520, comment (f).

Restatement jurisdictions which recognize the doctrine of strict liability for dangerous activities impose it only in narrow circumstances. *See* P.R.I.C.E., Inc. v. Keeney, 1998 WL 417591, *6 (Conn. Super. 1998).   And no principled application of these factors can countenance the result of holding an electric utility strictly liable for engaging in an ultrahazardous activity.  *See* New Meadows Holding Co. by Raugust v. Washington Water Power Co., 659 P.2d 1113, 1118 (Wash. App. 1983) (applying Restatement provisions and

21

1    concluding that "no other jurisdiction has imposed strict liability for accidents arising out of gas

2    transmission lines.").

3                                               **VIII.**

4                        **PLAINTIFFS MAY NOT RECOVER ATTORNEYS' FEES**

5            In addition to the other damages being sought in Plaintiffs' Prayer for Relief, they also

6    request an award of attorneys' fees.   Such fees are not specifically authorized by the

7    Government Liability Act.  Neither are they customarily awarded to successful tort claimants

8    under the common law of the Commonwealth.  Thus, Plaintiffs have failed to state a claim

9    entitling them to recover attorneys' fees.

10        **A.  The Commonwealth has Not Expressly Waived Liability for Attorneys' Fees**

11           It is important to emphasize that there is simply no positive provision of the

12   Government Liability Act that authorizes a prevailing party to recover attorneys' fees as matter

13   of right.  The only mention of the matter is found in Section 2203 of the Act.  That section

14   limits the amount an attorney may charge his client in pursuing a government claim, but the

15   statue falls far short of waiving sovereign immunity so as to authorize the award of attorneys'

16   fees as an element of damages under the Act.

17           The Commonwealth Supreme Court has made it clear that no entitlement to particular

18   damages against the Commonwealth is created by implication; and such will not be awarded

19   absent an express waiver of sovereign immunity.  *See* Pangelinan v. Northern Mariana Islands

20   Retirement Fund, 2009 MP 12, ¶¶ 31, 35, 2009 WL 2854434, *12 (N.M.I. 2009) (holding that

21   plaintiff was not entitled to recover interest from the government because the Commonwealth

22

23                                                 22

24

legislature did not expressly authorize such awards, and since the Retirement Fund's operations do not bring it within the private commercial enterprise exception).

**B. Any Award of Attorneys' Fees Would Contravene General Tort Law Principles**

Moreover, it would be surprising indeed to see the Commonwealth Legislature authorize any award of attorneys' fees in a tort case, because it is fundamental under the so-called "American Rule," applicable in courts throughout the country—including those applying the Restatements of the Law—that absent a statute or contract provision providing otherwise, a prevailing party may not recover attorneys' fees as damages in such cases. *See* Sampson v. National Farmers Union Property and Cas. Co., 144 P.3d 797, 800 (Mont. 2006) (Acknowledging that "a party is not entitled to attorney's fees absent a specific contractual provision or statutory grant."); In re Gagle, 230 B.R. 174, 184 (Bkrtcy. D. Utah 1999) ("Both the American Rule and the Restatement (1977) § 914, provide that damages in a tort action do not ordinarily include attorney fees.").

The Government Liability Act's mere waiver of tort liability for negligence does not alter the "American Rule" against attorneys' fees awards. Thus, Plaintiffs' request for attorneys' fees is due to be dismissed even if the other problems outlined herein did not exist.

Plaintiffs' request for attorneys' fees should be stricken.

**IX.**

**PLAINTFFS HAVE FAILED TO STATE A CLAIM FOR RECKLESS INFLCITON OF EMOTIONAL DISTRESS**

Plaintiffs' Third Cause of Action, alleging "Reckless Infliction of Emotional Distress" is on decidedly shaky ground as a separate tort. The "emotional" damages of which the

23

1    principal plaintiff complains are essentially part of his general tort damages for his physical

2    injuries.  It would appear that by use of the word "reckless" Plaintiffs are attempting to make

3    avail of the formulation set forth in Section 46(1) of the *Restatement (Second) of Torts*.

4    Specifically, this section provides as follows: "One who by extreme and outrageous conduct

5    intentionally or recklessly causes severe emotional distress to another is subject to liability for

6    such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

7    *Restatement (Second) of Torts* § 46(1) (1965).  *See also* Dornfeld v. Oberg, 503 N.W.2d 115,

8    117 (Minn. 1993).

9         This tort is categorized as a "reckless or intentional" tort, as distinguished from the tort

10   of "negligent infliction of emotional distress," which sounds in negligence. *See Restatement*

11   *(Second) Torts* § 46, cmt. a (1965).  As such, the tort normally lies where a plaintiff does not

12   suffer direct physical injury but instead suffers mental harm as a consequence of some

13   outrageous event, such viewing a shocking incident.  *See Id.*, Illustrations 1-4.  The tort has no

14   place in a case, such as the instant one, where the Plaintiffs allege direct physical harm via the

15   Defendants' negligence.  This is significant because, as we have seen, the Government Liability

16   Act applies as a waiver only of torts sounding in "negligence."  There has been no waiver as to

17   intentional torts or reckless torts.

18        As federal cases have noted, the FTCA does not apply to a variety of intentional torts

19   including "[a]ny claim arising out of assault [or] battery."  Nanartonis v. U.S., 1986 WL 428,

20   *2 (D. Mass. 1986).  Thus, even if all of the other reasons for dismissal did not apply, then at a

21   minimum, Plaintiffs' third cause of action is due to be dismissed.  While emotional distress can

22   be an element of damages for negligence, under appropriate circumstances, Plaintiffs have

23

24
                                            24

failed to set forth any actionable claim for reckless infliction of emotional distress as a stand-alone tort.  *See Restatement (Second) of Torts* §46, at cmt. b.

### <u>CONCLUSION</u>

For multiple separate and independent reasons, the Complaint in the above-captioned cause is due to be dismissed, in full or in part.  Thus, CPA's motion to dismiss for failure to state a claim and to strike jury demand should be GRANTED.

Respectfully submitted this 15th day of March, 2010.

**MAIR, MAIR, SPADE & THOMPSON, L.L.C.**
Attorneys for Defendant Commonwealth Ports
 Authority


By____/s/ RANDALL TODD THOMPSON_____
         Bar No. F0158

P108024.RTT

25